UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE,<br>Plaintiff,<br>-against-<br>MONDELEZ INTERNATIONAL, et al.,<br>Defendants. | 1:25-CV-8088 (LTS)<br>ORDER TO AMEND |

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff, a Bronx resident, who appears *pro se*, asserts claims under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, as well as under the "federal cyberstalking statute," 18 U.S.C. § 2261A, and claims under state law. In her complaint, she seeks damages and injunctive relief. Plaintiff names the following institutions and individuals as Defendants: (1) Mondelez International, Inc. ("MII"), "a multinational food and beverage corporation incorporated in Illinois with its principal place of business in Chicago, Illinois[;] [i]t owns the Nutter Butter brand"; (2) Dentsu Inc. ("Dentsu"), "a global advertising and public relations firm based in Tokyo, Japan, with U.S. subsidiaries operating in New York and elsewhere[;] [i]t managed social media campaigns for [MII] and Nutter Butter"; (3) Nutter Butter, "a brand operated by [MII]"; (4) Slim Jim, "a brand of Conagra Brands, Inc., a multinational packaged foods company headquartered in Chicago, Illinois"[1]; (5) AdWeek, "a media entity focused on advertising and marketing"; (6) "Cammedia/InternetModeling.com/Webmasters[,] . . . an online modeling platform operated by Leonard Bensonhoff" ("Cammedia"); (7) Leonard Bensonhoff,

[1] While not specifically named as a Defendant in the caption of the complaint, Plaintiff refers to Conagra Brands, Inc. ("CBI") as a Defendant within the text of her complaint. (ECF 1, at 2.) Because Plaintiff appears *pro se*, for the purposes of this order, the Court regards CBI as a named Defendant in this action.

"an individual who owns and controls Cammedia and its related platforms"; (8) "'Oz' (true name unknown)[,] . . . a [web]site developer at Cammedia who facilitated harassment and hacking through online 'troll' groups"; (9) Kelly Amatangelo, an MII employee "responsible for managing Nutter Butter's social media accounts and directing its campaigns"; (10) Caitlin Bolmarich, another MII employee responsible for the same as described above for Defendant Amatangelo; (11) Ryan Benson, "a Dentsu employee who managed Nutter Butter's social media accounts between approximately June 2022 and September 2023"; (12) Tony Wood, a "Dentsu employee[] or affiliate[] who participated in the management of Nutter Butter's accounts and campaigns"; (13) Aidan Maloney, another "Dentsu employee[] or affiliate[]"; (14) Audrey Burroughs, yet another "Dentsu employee[] or affiliate[]"; (15) Zack Poczekaj, still another "Dentsu employee[] or affiliate[]"; (16) Sandra Yang, also another "Dentsu employee[] or affiliate[]"; (17) Olivia Matalon, another "Dentsu employee[] or affiliate[]"; and (18) "Does 1-100[,] . . . other individuals and entities whose names are unknown at this time but who acted in concert with the above-named Defendants." (ECF 1, at 2-3.)

Plaintiff filed with her complaint a "motion for a protective order" (ECF 5), in which she asks the Court to: (1) order the Defendants and their affiliates to cease contact with Plaintiff directly, and to communicate with Plaintiff only through counsel or court flings; (2) redact Plaintiff's personal information, including her address, telephone numbers, email addresses, photographs of her and her home, and her "medical/private information" that are included in her court filings or to seal those filings; (3) order Defendants to "immediately cease all social media posts or public communications referencing Plaintiff, directly or indirectly"; (4) order Defendants to cease "us[ing] or disseminat[ing] unlawfully obtained or hacked material"; (5) order that "[a]ll discovery containing Plaintiff's sensitive data shall be marked confidential

and used solely for this litigation"; and (6) "grant such additional relief as necessary to protect Plaintiff's safety, privacy, and ability to litigate."[2] (*Id.* at 4.)

By order dated October 2, 2025, the court granted Plaintiff leave to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons set forth below, the Court grants the "motion for a protective order" inasmuch as the Court: (1) orders sealed Plaintiff's already-filed court submissions—her complaint, IFP application, consent to electronic service of court documents, and motion for a protective order (ECF 1, 2, 3, 5), which include Plaintiff's true name, address, telephone number, email address, and other personal information and images; and (2) allows Plaintiff to proceed in this action prospectively under the pseudonym "Jane Doe."[3] Also, for the reasons set forth below, the Court grants Plaintiff leave to file, under the pseudonym "Jane Doe," an amended complaint to be filed within 30 days of the date of this order. Because of the defects in Plaintiff's original complaint, the Court denies the remainder of Plaintiff's requests in her "motion for a protective order" (ECF 5) without prejudice to Plaintiff's again making those requests upon filing an amended complaint, as specified by this order.

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see*

[2] The Court construes, among such requests, a request to proceed under a pseudonym. In light of these requests, including the construed request to proceed under a pseudonym, the Court has directed the Clerk of Court to restrict electronic access to Plaintiff's already-filed court submissions and to redact from the court's public electronic docket of this action Plaintiff's name, mailing address, telephone number, and email address, leaving for public view only the pseudonym "Jane Doe."

[3] For this reason, the court's previous order granting Plaintiff IFP status (ECF 6) and this order both refer to Plaintiff as "Jane Doe."

*Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits—to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure ("Rule 8"), which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.* at 679.

## BACKGROUND

Plaintiff alleges the following in her 398-page complaint[4]: Beginning in 2017, Plaintiff worked as a webcam model for Defendant Cammedia. In June 2017, Plaintiff "was recorded without consent during a live stream." (ECF 1-8, at 2.) Thereafter, she entered into a romantic relationship with one of Cammedia's users, a person she refers to as "Ben." By June 2018, Plaintiff learned of Defendant "Oz," a Cammedia website developer and administrator, and that he had been discussing online a situation that was similar to Plaintiff's situation with Ben. Plaintiff became concerned that Oz was monitoring Plaintiff's private conversations with Ben, including her conversation with Ben on the Snapchat application; Plaintiff suspected that either her or Ben's Snapchat accounts had been compromised.

In November 2018, Plaintiff created a secondary online account "to connect privately with supportive site members away from [her] busy" already-known profile. She confided with another user, "Dow," about her relationship with Ben; "Dow" "reacted harshly, calling [her] an 'idiot,' labeling Ben a 'wanker,' and stating he 'didn't like [her]' before blocking [her]." (*Id.*)

Between November 2018 and January 2019, Plaintiff noticed "anomalies" on the Cammedia website "suggesting [that] it had been hacked"; she "sent private fanmail to Ben, deliberately calling some models 'ugly' to see if it would leak"; this information spread, confirming Plaintiff's "suspicions of unauthorized access to private communications." (*Id.* at 3.)

In January 2019, on the Cammedia website, Dow told Plaintiff to "'fuck off, die, [and] kill yourself' before kicking [Plaintiff] from his chat." (*Id.* at 2.) On January 23, 2019, Plaintiff reported to Cammedia's "Smoking Lounge" part of its website about Dow's death threats and she

---

[4] The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation are as in the complaint unless otherwise noted.

sought support. "Instead, [she] was met with hostility, bullied by moderators and dozens, possibly hundreds, of users." (*Id.*) In March 2019, Ben suggested to Plaintiff that she "deserved" Dow's death threats. (ECF 1, at 10; ECF 1-8, at 2.)

In September 2019, Plaintiff "permitted Ben to record a private sex act for his personal use." (ECF 1-8, at 3; ECF 1, at 10.) In November 2019, however, she "was permanently banned from Cammedia after defending [herself] against ongoing harassment." (ECF 1-8, at 3.) In December 2019, Plaintiff discovered that another user's Cammedia "profile photo depicted the sex act [that Plaintiff] had allowed Ben to record . . . suggest[ing] that Ben may have shared the video or been hacked." (*Id.*) "Immediately thereafter, coordinated online attacks began against Plaintiff, spreading narratives that she was jealous ('jelly'), [a] stalker, unstable ('nuts'), and a 'scammer.'" (ECF 1, at 4.) By late 2019, "corporate accounts of Nutter Butter and affiliated brands published mocking posts targeting Plaintiff." (*Id.*) Those "Defendants also published 'Double Nutty' and related posts mocking Plaintiff's relationship with Ben." (*Id.*) They "continued this campaign for years, repeatedly referring to Plaintiff as 'jelly,' a false and malicious label while inciting hate and violence." (*Id.*)

On August 29, 2023, Plaintiff was bitten by a dog requiring her to receive "rabies shots." (ECF 1-8, at 4.) Plaintiff "believes this was orchestrated, given suspicious [social] media posts by" Nutter Butter, "which referenced the incident and contained imagery tied to [Plaintiff's] personal fears." (*Id.*; ECF 1, at 10.) She states that these social media posts, "along with others, appeared to be part of a coordinated campaign targeting [her], using Gematria, Morse code, and references to [her] private life, including [her] email and aliases . . . . Slim Jim has also done the same as Nutter Butter." (*Id.*)

In October 2024, Plaintiff "was followed to and into a gas station and Nutter Butter's October 17th 2024 'beep beep' TikTok post . . . further fueled [her] fears."[5] (*Id.*; ECF 1, at 10.) In November 2024, Plaintiff "was hacked and warned of a cartel-led trafficking plot involving hotel staff, showing [her artificial-intelligence] generated videos of violence."[6] (ECF 1-8, at 4.) Plaintiff fled to New Jersey and stayed with her sister, but was involuntarily hospitalized in a psychiatric ward for two weeks. Then, "[a] judge released [her], finding no basis for continued detention." (*Id.*)

On December 18, 2024, Plaintiff "returned to the New Hampshire hotel with a requested police escort to retrieve [her] belongings [*sic*]," but the police refused to assist her. (*Id.*) At the hotel, Plaintiff "discovered $1,000 worth of items missing, and neither the hotel manager, Aidan, nor the district manager, Ryan, responded to [her] complaints." (*Id.*)

Nutter Butter's "posts continued to mock [Plaintiff]," making personal references and "suggesting ongoing surveillance." (*Id.*) "Throughout this period, [Nutter Butter's] and Slim Jim's social media accounts documented [her] private struggles . . . accessed through hacked devices, including [her] phone's front and back cameras. They slandered [her] as a 'jealous, crazy, stalker,' despite her efforts to address hacking, cyberbullying, and privacy violations." (*Id.*) Plaintiff states that "[h]acking, [c]yberstalking, [s]talking, [d]efamation, [and intentional infliction of emotional distress] continue until this day." (ECF 1, at 10.)

[5] It is unclear where this alleged event occurred, though it may have occurred in New Hampshire.

[6] Again, it is unclear where this alleged event occurred, though it too may have occurred in New Hampshire.

## DISCUSSION

### A. Sealing documents and proceeding under a pseudonym

#### 1. Sealing documents

The Court grants Plaintiff's "motion for a protective order" (ECF 5) inasmuch as Plaintiff seeks the sealing of her already-filed court submissions, including her complaint, IFP application, consent to electronic service of court documents, and her "motion for a protective order (ECF 1, 2, 3, 5); these submissions include Plaintiff's true name, address, telephone number, email address, and other personal information and images.

Both the common law and the First Amendment protect the public's right of access to court documents. *See Nixon v. Warner Comms., Inc.*, 435 U.S. 589, 597-99 (1978); *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91-92 (2d Cir. 2004). This right of access is not absolute, and "the decision as to access [to judicial records] is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599 (footnote omitted).

The United States Court of Appeals for the Second Circuit has set forth a three-part analysis to determine whether, under the common law, a document relating to a lawsuit should be made available to the public. *See Lugosch v. Pyramid Co.*, 435 F.3d 110, 119-20 (2d Cir. 2006). First, the Court must determine whether the document at issue is indeed a "judicial document," to which the public has a presumptive right of access. *Id.* at 119. Judicial documents are those that are "relevant to the performance of the judicial function and useful in the judicial process." *Id.* (internal quotation marks and citation omitted).

Second, if the Court determines that the material to be sealed is a judicial document, then the Court must determine the weight of the presumption of access. *Id.* "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of

Article III judicial power and the resultant value of such information to those monitoring the federal courts." *United States v. Amodeo*, 71 F.3d. 1044, 1049 (2d Cir. 1995).

Finally, "the court must balance competing considerations against" the presumption of access. *Lugosch*, 435 F.3d at 120 (internal quotation marks and citation omitted). "Such countervailing factors include but are not limited to the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure."[7] *Id.* (internal quotation marks and citation omitted).

"The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such an action." *DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 826 (2d Cir. 1997). Pleadings, which include the document that initiates a civil suit (a complaint), *see* Fed. R. Civ. P. 3, 7(a)(1), are considered judicial documents for the purposes of this analysis, *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 140 (2d Cir. 2016). The same is true for IFP applications, *see Komatsu v. City of New York,* No. 1:20-CV-6510 (LLS), 2020 WL 8641272, at *1 (S.D.N.Y. Sept. 2, 2020), and for motions to seal, *e.g.*, *Brunkhorst v. Bischoff*, No. 21-CV-4362 (JPC), 2023 WL 1433573, at *1 (S.D.N.Y. Feb. 1, 2023). A consent to electronic service of court documents can be considered a judicial document because it is

[7] As to the relevant First Amendment analysis, there are two different approaches. The first is "the so-called 'experience and logic' approach[,] [which] requires the court to consider both whether the documents 'have historically been open to the press and general public' and whether 'public access plays a significant positive role in the functioning of the particular process in question." *Lugosch*, 435 F.3d at 120 (citations omitted). The Second Circuit has noted that "[t]he courts that have undertaken this type of inquiry have generally invoked the common law right of access to judicial documents in support of finding a history of openness." *Id.* (citation and internal quotation marks omitted). As to the second approach, courts "consider[] the extent to which the judicial documents are 'derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings.'" *Id.* (citation and footnote omitted). Here, because the common law right of access allows the Court to grant Plaintiff's motion, inasmuch as Plaintiff seeks to have sealed her already-filed court submissions, there is no need to discuss these approaches to First Amendment analysis.

"relevant to the performance of the judicial function and useful in the judicial process, " *Lugosch*, 435 F.3d at 119 (internal quotation marks and citation omitted); it expresses a litigant's intent to waive traditional service of court documents by the court and to receive such documents by electronic means.

After weighing the abovementioned factors, the Court finds that Plaintiff's complaint, IFP application, consent to electronic service of court documents, and the pending "motion for a protective order" (ECF 1, 2, 3, 5) should be sealed. They are all judicial documents for the purposes of this analysis. In addition, for the purposes of public oversight of the federal judiciary, there is little public value to these documents. Also, given that these documents reveal Plaintiff's true name, address, telephone number, email address, and other personal information and images, and given that Plaintiff has alleged that she has received death threats, has been followed, and has had personal images shared online without her authorization, her privacy interests outweigh the presumption of access. Accordingly, the Court directs the Clerk of Court to seal Plaintiff's complaint, IFP application, consent to electronic service of court documents, and "motion for a protective order." (ECF 1, 2, 3, 5.)

**2. Proceeding under a pseudonym**

To the extent that Plaintiff seeks, in her pending motion (ECF 5), to proceed prospectively in this action under a pseudonym, the Court grants that request. Rule 10(a) of the Federal Rules of Civil Procedure provides that "[t]he title of [a] complaint must name all the parties." Fed. R. Civ. P. 10(a). "This requirement, though seemingly pedestrian, serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188-89 (2d Cir. 2008). Courts have, however, permitted a party to proceed pseudonymously in a limited number of circumstances. The Second Circuit has articulated the following nonexhaustive list of ten factors that a court

should consider when deciding whether to permit a party to proceed under a pseudonym or anonymously:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* at 189-90 (alterations, ellipses, quotation marks, and citations omitted). "[T]his factor-driven balancing inquiry requires a district court to exercise its discretion in the course of weighing competing interests. . . ." *Id.* at 190. (citation omitted).

With respect to the most relevant abovementioned factors, Plaintiff's allegations make clear that: (1) this action involves matters that are "highly sensitive and of a personal nature"; (2) "identification poses a risk of retaliatory physical or mental harm to" Plaintiff; (3) "identification presents other harms . . . [and] the injury litigated against [may be] incurred as a result of [P]laintiff's identity"; (4) there does not appear to be any prejudice to be suffered by the Defendants (who have not yet been served), at least, at this initial stage of the litigation, by allowing Plaintiff to proceed under a pseudonym; (5) as discussed above, Plaintiff's identity has thus far been kept confidential; (6) the public's interest in the litigation is not furthered by requiring Plaintiff to reveal her identity; and (7) given the allegations, there is a weak public

interest in revealing Plaintiff's identity. Accordingly, the Court grants Plaintiff's motion (ECF 5) inasmuch as Plaintiff requests to proceed in this action prospectively under a pseudonym. Plaintiff will, in this action, until further order of the court, refer to herself, and will be referred to by the court and by the Defendants, as "Jane Doe."

**B. Civil claims brought under federal and state criminal statutes**

By citing federal and state criminal statutes (ECF 1, at 2, 6 (citing the CFAA, 18 U.S.C. § 2261A, and N.Y. Penal Law § 120.45)), Plaintiff seems to be attempting to assert civil claims under them. Unlike the CFAA, *see infra* at 13-15, however, Section 2261A does not provide for a private right of action. *See Kenyatta v. Rowson*, No. 1:25-CV-7293 (JMF), 2025 WL 2978564, at *1 (S.D.N.Y. Oct. 22, 2025) (Section 2261A "does not expressly provide a private right of action and Plaintiff provides no reason to think that Congress intended to create one"); *see generally Daniel v. Safir*, 135 F. Supp. 2d 367, 376 (E.D.N.Y. 2001) ("It is well-settled that, unless specifically provided for, federal criminal statutes rarely create private rights of action." (citing *Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979))). The same is true with respect to any civil claims that Plaintiff attempts to assert under New York's Penal Law. *See Adams v. Co-op City Dep't of Public Safety*, No. 1:21-CV-2675 (DEH), 2026 WL 1725110, at *2 (S.D.N.Y. June 15, 2026) ("Impersonating a police officer is a criminal offense in New York, but 'criminal offenses . . . [that] are specifically defined in the Penal Law, may not be pleaded as separate causes of action in a civil action." (footnotes omitted)); *Chandler v. Skipper*, No. 3:24-CV-0206, 2025 WL 2442890, at *13 (N.D.N.Y. Aug. 25, 2025) ("[T]here is 'no private right of action to enforce either state or federal criminal statutes.'" (citation omitted)). Accordingly, with the exception of Plaintiff's claims brought under the CFAA, the Court dismisses, for failure to state a claim on which relief may be granted, Plaintiff's civil claims brought under federal and state criminal statutes. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**C. CFAA claims**

With respect to Plaintiff's claims of her devices being hacked by the Defendants, the Court understands such claims as brought under the CFAA, specifically, under 18 U.S.C. § 1030(g). That provision allows for a private cause of action for "[a]ny person who suffers damage or loss by reason of a violation" of Section 1030[8] "if the conduct involves [one] of the factors set forth in" 18 U.S.C. § 1030(c)(4)(A)(i)(I), (II), (III), (IV) or (V).[9] 18 U.S.C. § 1030(g). For the purposes of this provision, "'damage' means any impairment to the integrity or availability of data, a program, a system, or information." § 1030(e)(8). The term "loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." § 1030(e)(11). Such an action must be

---

[8] A violation of Section 1030 includes when someone "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains— . . . information from any protected computer." 18 U.S.C. § 1030(a)(2)(C). For the purposes of the CFAA, a "protected computer" includes a computer that "is used in or affecting interstate or foreign commerce or communication." § 1030(e)(2)(B). With respect to CFAA claims brought under Section 1030(a)(2), the relevant statutory language "refers to accessing 'computer[s],' not accessing websites . . . . [T]he website is not the computer itself." *United States v. Cuomo*, 125 F. 4th 354, 364 (2d Cir. 2025), *cert. denied*, 146 S. Ct. 146 (2025).

[9] That conduct includes:

> (I) loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value;
> (II) the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals;
> (III) physical injury to any person;
> (IV) a threat to public health or safety;
> (V) damage affecting a computer used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security.

18 U.S.C. § 1030(c)(4)(A)(i)(I)-(V).

brought under Section 1030(g) "within 2 years of the date of the act complained of or the date of the discovery of the damage." § 1030(g).

"[T]o state a claim under CFAA, [a] [p]laintiff must allege that (1) [the defendant] intentionally accessed a protected computer (2) without authorization or in excess of his authorized access, (3) thereby obtaining information from the protected computer (4) and causing" loss or damage, as defined above, and being involved with one of the factors set forth in Section 1030(c)(4)(A)(i)(I) through (V). *Caro v. Weintraub*, No. 3:09-CV-1353, 2010 WL 4514273, at *11 (D. Conn. Nov. 2, 2010); *see Redcell Corp. v. A.J. Trucco, Inc.*, No. 1:20-CV-0018 (AT) (SLC), 2022 WL 683007, at *3 (S.D.N.Y. Mar. 8, 2022) (similar pleading standard). Claims under the CFAA "appl[y] to an 'outside' hacker who remotely enters a computer system without authority to do so." *JBCHoldings NY, LLC v. Parker*, 931 F. Supp. 2d 514, 521 (S.D.N.Y. Mar. 20, 2013) (Engelmayer, D.J.).

To the extent that Plaintiff asserts CFAA claims under Section 1030(a)(2)(C), she does not allege facts sufficient to state such a claim. First, it is unclear whether, as a result of any of the alleged hacking by any of the Defendants, Plaintiff suffered "damage" or "loss," as defined by the CFAA. Assuming that she did, Plaintiff has also not alleged facts sufficient to show that any named Defendant: "(1) . . . intentionally accessed a protected computer (2) without authorization or in excess of his authorized access, (3) thereby obtaining information from the protected computer (4) and causing" loss or damage to Plaintiff, as defined above, that is involved with one of the factors set forth in Section 1030(c)(4)(A)(i)(I) through (V). *Caro*, 2010 WL 4514273, at *11. The Court therefore dismisses these claims for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). In light of Plaintiff's *pro se* status, however, the Court grants Plaintiff leave to file an amended complaint, under the pseudonym

"Jane Doe," in which she alleges facts sufficient to state such a claim against at least one of the Defendants.

**LEAVE TO AMEND**

Plaintiff proceeds in this matter without the benefit of an attorney. Federal district courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the United States Court of Appeals for the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state a valid claim under the CFAA, the Court grants her 30 days' leave to file an amended complaint to allege such facts.

Plaintiff is granted leave to file an amended complaint, under the pseudonym "Jane Doe," in which she alleges facts describing how the Defendants violated the CFAA and where those incidents occurred. In the "Statement of Claim" section of the amended complaint, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each Defendant. If Plaintiff has an address for any named Defendant, she must provide it. Plaintiff should include all of the information in the amended complaint that she wants the Court to consider in deciding whether the amended complaint states a claim for relief. That information should include:

a) the names and titles of all relevant people;

b) a description of all relevant events, including what each Defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

c) a description of the injuries Plaintiff suffered; and

d) the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's amended complaint should tell the Court: who violated her federally protected rights; how; when, and where such violations occurred; and why Plaintiff is entitled to relief. Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint.

While the Court will not, at this time, impose a page limitation on the amended complaint, **the Court does find that Plaintiff's original complaint falls short of complying with Rule 8's requirement that a complaint include a <u>short and plain</u> statement of claim.** *See* Fed. R. Civ. P. 8(a)(2). The Court therefore directs Plaintiff to file an amended complaint that has **a short and plain** statement of claim stating the facts that are the basis of her claims, as specified above. While Plaintiff may attach **some supporting** documentation to her amended complaint (a few pages, not hundreds), those attached documents, by themselves, are not the amended complaint's statement of claim; Plaintiff herself must set forth her allegations in her amended complaint's statement of claim.

Plaintiff should also be mindful that, though she is being permitted to proceed under the pseudonym "Jane Doe" in this action prospectively, including with respect to any amended complaint filed in response to this order, **any information contained in that amended complaint will likely not be sealed, restricted, or redacted by the Court; it will likely be**

**available for public scrutiny and will be accessible electronically.** If Plaintiff wishes to file an amended complaint including content that she wishes to be sealed, however, she must, within the time allowed by the Court in this order: (1) file a redacted version of the amended complaint that will be available for public viewing; and (2) file a motion to seal her amended complaint, and have attached to it an unredacted version of the amended complaint. Plaintiff's filing of a motion to seal her unredacted amended complaint does not guarantee that her unredacted amended complaint will ultimately be ordered sealed.

## CONCLUSION

The Court directs the Clerk of Court to electronically serve a copy of this order to Plaintiff at the email address listed in her consent to electronic service of court documents. (ECF 3.)

The Court grants Plaintiff's "motion for a protective order" (ECF 5) inasmuch as the Court: (1) orders sealed Plaintiff's already-filed court submissions— her complaint, IFP application, consent to electronic service of court documents, and "motion for a protective order" (ECF 1, 2, 3, 5); and (2) allows Plaintiff to proceed in this action prospectively under the pseudonym "Jane Doe." Because of the defects in Plaintiff's original complaint, however, the Court denies the remainder of Plaintiff's "motion for a protective order" (ECF 5) without prejudice to Plaintiff's making such remaining requests again upon her filing of an amended complaint, as specified in this order. The Court therefore directs the Clerk of Court to terminate ECF 5.

The Court grants Plaintiff leave to replead her claims, as specified above, under the pseudonym "Jane Doe," in an amended complaint to be filed within 30 days of the date of this order. An amended complaint form is attached to this order.

If Plaintiff fails to file an amended complaint within the time allowed, the Court will dismiss this action. The Court will dismiss Plaintiff's claims under federal law for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). The Court will also decline to consider, under its supplemental jurisdiction, Plaintiff's claims under state law. *See* 28 U.S.C. § 1367(c)(3).

The Court certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and, therefore, IFP status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated: August 23, 2026
New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge